[Cite as *In re K.T.*, 2016-Ohio-7366.]

STATE OF OHIO            )            IN THE COURT OF APPEALS
                         )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN         )

IN RE: K.T.                           C.A. No.    16CA010956
       K.T.
       K.T.

                                      APPEAL FROM JUDGMENT
                                      ENTERED IN THE
                                      COURT OF COMMON PLEAS
                                      COUNTY OF LORAIN, OHIO
                                      CASE Nos.   13JC38912
                                                  13JC38913
                                                  13JC39779

DECISION AND JOURNAL ENTRY

Dated: October 17, 2016

SCHAFER, Judge.

{¶1}   Appellant, Shaniqua T., has appealed from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her three minor children and placed them in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.

I.

{¶2}   Shaniqua T. ("Mother") and Marque T. ("Father") are the unmarried parents of K.T., born on November 20, 2010, K.T., born on January 24, 2012, and K.T., born on August 6, 2013. Father has not appealed from the judgment of the trial court.

{¶3}   LCCS initially became involved with the family in 2011 upon concerns that the oldest child was neglected due to domestic violence between the parents. Then, in March 2013, Mother took the second child to the hospital with a fever and nosebleeds. The hospital staff

discovered additional injuries, including a cut on his ear and a swollen and bruised penis. A subsequent bone scan revealed a posterior fractured rib that was determined to have been caused by non-accidental means. The perpetrator was never determined. Efforts to find a relative placement for the oldest child for one night so that Mother could stay in the hospital with the second child were unsuccessful. LCCS had to take the child to Blessing House instead.

{¶4} LCCS filed complaints regarding the two oldest children in juvenile court on April 16, 2013. A dependency complaint regarding the third child was filed on August 8, 2015. Upon adjudication, the second child was found to be abused, neglected, and dependent, and the oldest child and youngest child were found to be dependent. Temporary custody was granted to LCCS, and all three children were placed in foster care. The trial court adopted a case plan which required both parents to take a parenting class; address mental health, specifically in regard to anger management and domestic violence; demonstrate the ability to provide for the children's basic needs; and participate in weekly visitation. Father was to establish paternity.

{¶5} The agency moved for permanent custody of the children on February 5, 2014, and the trial court granted the motion on July 14, 2014. Father appealed from the judgment. On June 15, 2015, this Court reversed the trial court judgment, finding that Father had received ineffective assistance of trial counsel. *See In re K.T.*, 9th Dist. Lorain No. 14CA010646, 2015-Ohio-2304.

{¶6} Upon remand, the agency immediately sought and received emergency temporary custody of the children. Temporary custody was granted thereafter. The agency moved for permanent custody of all three children,[1] and the matter eventually proceeded to hearing. On

---

[1] Following the reversal and remand from the Court of Appeals, LCCS filed motions for permanent custody on June 15, 2015 (the same day the appellate decision was issued), September 16, 2015, December 11, 2015, and February 5, 2016.

April 27, 2016, the trial court granted permanent custody of the children to LCCS and terminated the parental rights of both parents. Mother has appealed and has assigned two errors for review. We consider the assigned errors in reverse order for ease of discussion.

II.

## Assignment of Error II

THE TRIAL COURT FINDING THE REQUIREMENTS UNDER ORC 2151.414 HAD BEEN MET WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mother has contended that the judgment of the trial court is against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶8} In determining whether a trial court's ruling is against the weight of the evidence: "[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal quotations and citations omitted.) *Eastley v.*

*Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶9} In her supporting argument, Mother challenges only the finding on the first prong of the permanent custody test. The trial court made several alternative findings on the first prong of the permanent custody test, including: (1) the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, under R.C. 2151.414(B)(1)(a); (2) abandonment, under R.C. 2151.414(B)(1)(b); and (3) the children had been in the temporary custody of the agency for 12 of 22 consecutive months, under R.C. 2151.414(B)(1)(d).[2] In support of the finding that the children could not or should not be placed with either parent, the trial court found that: (1) the parents failed to remedy the conditions that caused the children to be placed outside the home, under R.C. 2151.414(E)(1); (2) the parents demonstrated a lack of commitment toward the children, under R.C. 2151.414(E)(4); and (3) the parents abandoned the children, under R.C. 2151.414(E)(10).

---

[2] Because the record supports an alternative finding, we do not address the applicability of R.C 2151.414(B)(1)(d). However, in an effort to avoid replication, we note that the record appears to reflect some misapprehensions in the manner of calculating the "12-of-22" time period.

First, R.C. 2151.414(B)(1)(d) makes it clear that this calculation applies only to the time a child has been in the "temporary custody" of indicated agencies. Further, the second paragraph of R.C. 2151.414(B)(1)(e) defines temporary custody for these purposes and provides that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." Second, before a motion for permanent custody is filed, the grounds for that motion must be in existence. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 24. Consequently, the time passing between the filing of a motion for permanent custody and the permanent custody hearing do not count towards the calculation of time in satisfaction of R.C. 2151.414(B)(1)(d). *C.W.* at ¶ 26.

{¶10} A finding under any one of the factors under R.C. 2151.414(E) compels the trial court to enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E). Moreover, "[t]he factors contained within R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and only one must be met in order for the first prong of the permanent custody test to be satisfied." *In re S.G.,* 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 11. Because this Court concludes that the record supports the finding that the parents have failed to remedy the conditions that caused the children to be placed outside the home, it considers that issue at this time. *See* R.C. 2151.414(E)(1).

{¶11} The record indicates that the children were initially removed from their home due to concerns regarding their safety and welfare. There was a history of domestic violence in the home, a non-accidental injury to one of the children, and concern about the parents' ability to provide for the basic needs of the children. The case plan addressed those concerns and required the parents to address parenting skills, mental health, anger management, and domestic violence; identify friends or relatives as possible caregivers; be able to provide a stable home in which the children's basic needs are met; and participate in weekly visitation.

{¶12} Because of Mother's inconsistent attendance at visitation, the October 22, 2015 case plan required her to call the agency on the day before a scheduled visit to confirm that she would be coming and arrive an hour before the visit was to begin. The January 11, 2016 case plan suspended Mother's visitation until she completed a drug and alcohol assessment, completed a mental health assessment, and signed a release of information.

**Parenting and Visitation**

{¶13} Mother attended parenting classes in 2013, but the caseworker observed no improvement in her interactions with the children. In fact, she believed Mother's parenting had

gotten "a lot worse" over the course of the ensuing year because she was very inconsistent in attending visits and failed to maintain a bond with her children. The guardian ad litem similarly believed that Mother's lack of consistent visitation was a reflection of her parenting skills. The caseworker also observed that Mother spoke to the children in "sharp" tones as she verbalized directions to them. Otherwise, she sat in a chair and interacted little with the children. The caseworker expressed concern that Mother lacked insight into the need to keep children safe and lacked the ability to provide appropriate supervision.

{¶14} Following the reversal by this Court on July 15, 2015, Mother was permitted to visit her children weekly. However, from the time of remand until the permanent custody hearing in April 2016, Mother attended few visits: one in July 2015, one in January 2016, and two in February 2016. The caseworker testified that she still had concerns about Mother's ability to adequately parent her children and observed little bond between them. However, the three children had regular sibling visits and maintained an attachment to each other.

{¶15} Mother has countered that LCCS placed "obstacles" in her way that prevented her from attending more visits. Through her testimony, Mother maintained that she was required to call one hour before visits and said she was unable to comply with that requirement because of her work obligations. She claimed that this rule was an obstacle to her being able to visit between June 2015 and October 2015. However, Mother's case plan did not impose such a requirement. Rather, the case plan provided that Mother was to call the agency on "the day before the scheduled visit" and arrive "1 hr before the visit is to begin." Furthermore, Mother testified that she was unemployed from June or July 2015 and did not start working again until November 2015, thus, failing to demonstrate that her employment would create an obstacle for any such telephone calls. Mother also complains that she was prevented from attending visits

because of an outstanding warrant, but later testified that she took care of her warrant within one week. Consequently, the obstructive effect of the warrant is minimal and does not explain Mother's many other absences from visitations. Moreover, the record does not reflect that Mother, who was represented by counsel throughout, filed any motions or lodged any objections with the trial court regarding problems in securing her visitation.

{¶16} Father had no visits with his children during his incarceration from August 2013 until September 2015. Following his release, Father attended weekly visits for approximately six weeks, but then attended no visits during the remaining five months. When Father did attend visits, he was said to play well with the children and made sure they were safe, although there were some concerns about his parenting and discipline techniques. After those first few weeks, Father failed to maintain a relationship and bond with his children. The guardian ad litem believed that Father's lack of consistency in attending visits impacted the children and their ability to have feelings for him. After six weeks, Father decided, that although he loved his children, it was too difficult for him to see the children when permanent custody was being requested and he simply stopped attending visits. The record does not demonstrate that the parents remedied the concerns regarding their parenting ability.

**Mental health, anger management, and domestic violence**

{¶17} Mother engaged in mental health counseling from mid-2013 until December 2013, addressing anger management, coping skills, and childhood traumas. Thereafter, the caseworker nevertheless continued to believe that Mother was unable to control her anger and manage her emotions when she was stressed. She explained that Mother would get very loud, anxious, and exhibit bullying and controlling behaviors at such times. She wanted Mother to

continue to work with a mental health professional to learn coping skills and work on anger management.

{¶18} Concerns regarding Mother's anger issues continued after remand and are exemplified in the record. Paternal great grandmother pointed to Mother's harassment of her as contributing to her decision not to seek custody of the children. While residing with her own father, Mother was said to have beaten up his stepdaughter and was no longer permitted to stay in his home. Mother was convicted of two counts of disorderly conduct on September 2, 2015, and a third on January 22, 2016. According to the caseworker, Mother exhibited anger during at least one court hearing, becoming loud, losing self-control, and becoming unable to communicate effectively.

{¶19} Because of continuing concerns about Mother's anger issues, in December 2015, the agency proposed suspending Mother's visits until she completed a mental health assessment. Mother did complete the assessment and was permitted to resume visits. One of the recommendations from the mental health assessment was that Mother should engage in weekly counseling sessions, however, and Mother failed to engage in the recommended counseling sessions. The guardian ad litem did not believe that Mother had incorporated anger management principles into her life. She also believed that Mother's inability to deal with frustrations in her life without becoming angry was concerning in terms of raising children. The record demonstrates that Mother has failed to comply with the recommended mental health services or to remedy the concern.

{¶20} For his part, Father had a history of anger and domestic violence. The caseworker noted that he had been in foster care as a child, and she believed he suffered traumas that should be addressed through counseling. The record reveals that Father was convicted of domestic

violence against a pregnant family member on July 27, 2012 and was sentenced to community control sanctions. Subsequently, Father was convicted of aggravated burglary, felonious assault, robbery, and violation of the previously imposed community control sanction. On August 21, 2013, he was sentenced to three years in prison. He was subsequently granted judicial release on September 30, 2015. There is no evidence that Father received any mental health services, before, during, or after his prison sentence, although he recognized that he needed such services. The caseworker testified that she continued to have concerns about Father's mental health.

**Stability**

{¶21} The caseworker expressed concern that Mother was unable to provide for her own needs, let alone the needs of her children. At the start of this case, Mother and Father resided together in LMHA housing and visits were conducted there. Within four months, Father was incarcerated, Mother's utilities were shut off for lack of payment, and she lost her housing. At the time of the permanent custody hearing in April 2016, Mother still had not obtained independent housing and had not had stable housing for more than two years. Nor did Mother have stable employment. At the permanent custody hearing, Mother admitted that she had no proof of current or anticipated employment and had no verification of housing. The caseworker concluded that Mother has not demonstrated an ability to meet the basic needs of her children and has not met this case plan objective.

{¶22} Upon Father's release from prison, he resided first with his grandmother and then in a one-bedroom apartment with a new girlfriend. Over the next several months, Father secured a series of short-term jobs and was currently employed part-time at a pizza place. Father testified that he was hoping to obtain a larger apartment, but conceded that he was not able to

care for the children at that time. The evidence supports a conclusion that Father was not able to provide for the basic needs of his children.

{¶23} The trial court found that the parents have not demonstrated that they have been able to obtain and maintain stable housing, employment, or a safe and secure environment from which they can provide for the basic needs of their children on a long-term basis. Upon review, this Court concludes that the trial court did not clearly lose its way and create a manifest miscarriage of justice when it found that notwithstanding reasonable case planning and diligent efforts by the agency, Mother failed to substantially remedy the conditions that caused the children to be placed outside the home. *See* R.C. 2151.414(E)(1). As a result, the children could not be placed with either parent within a reasonable time or should not be placed with a parent. *See* R.C. 2151.414(B)(1)(a). Mother's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY WHEN [THERE] WAS [AN] ALTERNATIVE DISPOSITION AVAILABLE.

{¶24} Mother has asserted that the trial court erred in granting permanent custody of the children to the agency, believing that Abigail Frasher would be an appropriate legal custodian instead. In her supporting argument, Mother maintains that an alleged lack of investigation by LCCS deprived the trial court of adequate information about this individual to conclude that she was not a suitable custodian for the children.

{¶25} Ms. Frasher's relationship to the family is that she dated Mother's brother in 2010 and had two children with him. Ms. Frasher contacted LCCS to inquire about obtaining custody of K.T., K.T., and K.T. in January 2016, three months before the permanent custody hearing. At that time, she spoke to Mother's caseworker. As the caseworker later affirmed, Ms. Frasher told the caseworker that she wanted custody of the three children. According to Ms. Frasher, the

caseworker responded by saying that she was no longer pursuing placement with family members.

{¶26} Based on their telephone conversation, the caseworker had concerns about Ms. Frasher's ability and willingness to provide care for K.T., K.T., and K.T. and to assume the care of the children on a permanent basis. She learned that Ms. Frasher is a single parent with two young children of her own, ages two and three, so that an award of custody would give her five children under the age of five. At the time, she was a college student, expecting to graduate in seven months, with limited financial and support resources. She lives in subsidized housing and otherwise supports herself on $525 monthly in government support and occasional child support from her children's father when he is employed. Her own mother watches her two children while she attends evening classes and sometimes assists Ms. Frasher financially. Nevertheless, after concluding their telephone conversation, the caseworker did some preliminary investigation and learned that Ms. Frasher did not have a criminal record, did not have a history with children services, and had no inappropriate people living in her home. The caseworker did not conduct a home study of Ms. Frasher nor does the record reflect that she pursued any further investigation of possible placement of the children with Ms. Frasher. There is no evidence that Ms. Frasher failed to make herself available to further inquiries. In fact, Ms. Frasher initiated multiple telephone calls to the caseworker, the LCCS supervisor, and two employees in the kinship department to obtain information, invite consideration, and obtain custody of the children.

{¶27} Mother argues that "the trial court should have ordered LCCS to consider" Ms. Frasher, but Mother did not seek such an order from the trial court. Nor did she request a continuance to permit further investigation of Ms. Frasher as a potential custodian or otherwise preserve the matter for appellate review.

{¶28} Consequently, we must consider the evidence that was properly before the trial court. In addition to the above testimony, the record discloses that Ms. Frasher did not file a motion for legal custody, nor did Mother file a motion requesting that legal custody be granted to Ms. Frasher. *See* R.C. 2151.353(A)(3) (explaining that the trial court may grant legal custody to any person who has filed a motion for legal custody prior to the dispositional hearing). Mother never provided Ms. Frasher's name to the caseworker as a possible placement for the children, despite providing multiple other names to her, nor did Ms. Frasher contact the agency until January 2016, nearly three years after the children had been removed from their home. Finally, Ms. Frasher has not maintained a relationship with the children since their removal. She has not seen the two older children in three years and has not seen the youngest child since her birth. She failed to seek permission from the agency to visit the children while they were in the temporary custody of the agency.

{¶29} Based upon the record before us, we conclude that the trial court did not err in finding that Ms. Frasher would not be a suitable permanent placement option for the children and in failing to grant legal custody to Ms. Frasher. Mother's first assignment of error is overruled.

III.

{¶30} Mother's two assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

BARBARA WEBBER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY KIRSCH, Assistant Prosecuting Attorney, for Appellee.

KATHLEEN AMERKHANIAN, Guardian ad Litem.