OPINION
{¶ 1} Appellant, Pamela J., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of two minor children to appellee, Butler County Children Services ("BCCS").
 {¶ 2} Appellant is the biological mother of D. J. and A.G. Thomas S. and Robert G. are the biological fathers of the children, respectively, but neither father is a party to this appeal. On July 14, 2005, the children were removed from the home, and on July 27, 2005, BCCS filed a motion alleging that the children are neglected, abused, and dependent, after allegations of domestic violence in the home and physical abuse of A.G. On July 27, 2005, the juvenile court awarded BCCS emergency temporary custody of the children.
 {¶ 3} On August 29, 2006 the juvenile court magistrate issued a decision adjudicating both children neglected and dependent, and the court continued its previous temporary custody order with respect to both children. BCCS implemented a case plan to reunify the children with appellant, which required appellant to complete parenting classes, an in-home parenting program, mental health treatment, a psychological evaluation, and to continue participation in Adult Protective Services.
 {¶ 4} On January 18, 2007, BCCS moved for permanent custody of the children, alleging that the children cannot be placed with either parent within a reasonable time and that the children should not be placed with either parent, and that granting BCCS permanent custody of the children is in their best interest.
 {¶ 5} On March 13, 2008, the juvenile court magistrate granted BCCS's motion for permanent custody of the children. Appellant timely objected to the magistrate's decision and the juvenile court overruled the objections and affirmed the magistrate's decision in its entirety.
 {¶ 6} Appellant appeals the juvenile court's decision, raising three assignments *Page 3 
of error. For the purpose of discussion, we discuss appellant's second and third assignments of error together.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT AND/OR [BCCS] DISCRIMINATED AGAINST APPELLANT AND/OR VIOLATED THE AMERICANS WITH DISABILITIES ACT WHEN [BCCS] FAILED TO MAKE A REASONABLE ACCOMMODATION FOR THE MOTHER'S HUNTINGTON'S DISEASE, FAILED TO MAKE REASONABLE EFFORTS WHICH TOOK THESE LIMITATIONS INTO CONSIDERATION, FAILED TO SEEK A PLANNED PERMANENT LIVING ARRANGEMENT BECAUSE OF HER DISABILITY AND BONDED RELATIONSHIP WITH THE CHILDREN, AND THEN THE COURT STILL FOUND THAT REASONABLE EFFORTS HAD BEEN MADE AND TERMINATED HER PARENTAL RIGHTS FINDING SUCH TO BE IN THE CHILDREN'S BEST INTERESTS."
 {¶ 9} In her first assignment of error, appellant, who suffers from Huntington's disease, argues that BCCS violated the Americans with Disabilities Act ("ADA"), [1] and discriminated against appellant by failing to provide "reasonable accommodations" for appellant's disability in preparing and implementing the case plan. Further, appellant maintains the juvenile court erred in granting BCCS's permanent custody motion because of this alleged failure.
 {¶ 10} Title II of the ADA prohibits public entities from discriminating based on disability. The ADA was enacted to eliminate discrimination and create causes of action for qualified people who have faced discrimination. Section 12101(b), Title 42, U.S. Code. In pertinent part, the ADA states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of *Page 4 
the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Section 12132, Title 42, U.S. Code. *Page 5 
 {¶ 11} This court has previously held that "neither Title II of the ADA, nor the related regulations, provide that the assertion of a violation of the ADA by a public entity may be used as a defense against a legal action by the public entity." In re Moore (Sept. 5, 2000), Butler App. No. CA99-09-153, 16, citing In re Rodriguez (Aug. 4, 1999), Wayne App. No. 98CA007073. We still agree with this holding, and again we "decline the invitation to create a new means of enforcement that was not adopted by Congress or included by the attorney general in the regulations adopted to implement the ADA." Moore at 16.
 {¶ 12} Further, appellant is misplaced in her assertion that the appropriate disposition in this case would have been a planned permanent living arrangement ("PPLA") pursuant to R.C. 2151.413. The juvenile court was without authority to place the children in a PPLA, as BCCS did not file a motion requesting such a disposition. In re A.B.,110 Ohio St.3d 230, 2006-Ohio-4359, ¶ 37. Moreover, BCCS had no obligation to request such a disposition.
 {¶ 13} Appellant's first assignment of error is overruled.
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "THE COURT ERRED AS A MATTER OF FACT AND LAW AND ABUSED ITS DISCRETION WHEN FOUND [sic] TERMINATING THE PARENTAL RIGHTS OF APPELLANT TO BE IN THE CHILD'S BEST INTERESTS AND WHEN IT SO TERMINATED THE RIGHTS OF APPELLANT BECAUSE SUCH WAS NOT THE ONLY MEANS OF OBTAINING A LEGALLY SECURE PLACEMENT FOR THE CHILDREN."
 {¶ 16} Assignment of Error No. 3:
 {¶ 17} "THE COURT'S DECISION AND ORDER OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS, AND THE *Page 6 
EVIDENCE PRESENTED FAILED TO MEET THE REQUISITE CLEAR AND CONVINCING STANDARD."
 {¶ 18} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v.Kramer (1982), 455 U.S. 745, 759, 102 S.Ct. 1388. An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. In re Starkey, 150 Ohio App.3d 612,2002-Ohio-6892, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers
(2000), 138 Ohio App.3d 510, 520.
 {¶ 19} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the court must find that: (1) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D); and, (2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a), (b), (c) and (d); In re Schaefer, 111 Ohio St.3d 498,2006-Ohio-5513, ¶ 31-36; In re Ebenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990,
 {¶ 20} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that the children are neglected and dependent and had been in the *Page 7 
temporary custody of BCCS for more than 12 months of a consecutive 22-month period as of the date BCCS filed the permanent custody motion. However, appellant does dispute the juvenile court's finding that granting permanent custody is in the best interest of the children.
 {¶ 21} Accordingly, we must determine whether there was clear and convincing evidence that granting the motion for permanent custody was in the children's best interest.
 {¶ 22} R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to the following:
 {¶ 23} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 24} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 25} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 26} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 27} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 28} With respect to R.C. 2151.414(D)(1), the juvenile court found that while a *Page 8 
bond does exist between appellant and the children, the relationship between them is problematic. The juvenile court noted that appellant lives with Robert and her adult child, Amanda Dugger. Robert and Amanda have an ongoing relationship with each other, and have been openly sexually intimate for approximately three years. According to the record, there are several incidents of domestic violence within this household that have resulted in the filing of numerous criminal charges and civil protection orders.
 {¶ 29} Also, the court found that while appellant was initially consistent with visitation, her visitations with the children were sporadic in the months preceding BCCS's motion for permanent custody. The court found that appellant attended approximately half of the scheduled visitations. Further, the juvenile court noted that the children appear to be thriving in their current foster home.
 {¶ 30} With respect to R.C. 2151.414(D)(2), the juvenile court found that the children's Guardian Ad Litem recommended that permanent custody of the children be granted to BCCS.
 {¶ 31} With respect to R.C. 2151.414(D)(3), the juvenile court found that the children had been in the temporary custody of BCCS for approximately 18 consecutive months preceding BCCS's filing of the motion for permanent custody.
 {¶ 32} With respect to R.C. 2151.414(D)(4), the juvenile court found that the children's need for legally secure permanent placement cannot be achieved without granting BCCS's permanent custody motion. The juvenile court again recounted the chaotic living arrangements in which appellant lives. Also, the juvenile court discussed appellant's disease, and the significant effect it has on her ability to parent. According to the record, appellant's physical and mental abilities have been seriously diminished due to her condition to the extent that appellant cannot adequately care for the children on her own. While Adult Protective Services has offered appellant alternative housing *Page 9 
where she could receive on-site assistance, appellant has refused to move out of the home she shares with Robert and Amanda.
 {¶ 33} The juvenile court also detailed the significant efforts BCCS has undertaken to prevent removal of the children and ultimately to prevent the filing of a motion for permanent custody. Prior to the removal of the children, BCCS utilized the Family Preservation Program ("FPP") in the home. However, the FPP worker observed physical abuse and neglect of the children, medical neglect of the children, behavioral issues, and the negative impact caused by Amanda's presence in the home.
 {¶ 34} BCCS also referred appellant to counseling, which she failed to complete. However, during the sessions that appellant did attend, the counselor noted chaos in the family home due to the relationship between Robert and Amanda, constant domestic violence in the home, Robert's mental health issues, and the impact of appellant's disease. The counselor testified that she had no difficulty communicating with appellant.
 {¶ 35} Appellant also began parenting classes with both Catholic Social Services and the Development of Living Skills ("DLS") Program, but she failed to complete either. Karen Lavender, a parent educator with DLS, testified that appellant's cognitive abilities were taken into account when developing the parenting course, and that her limited ability in this regard did not affect her ability to participate in the lessons. However, appellant ultimately demonstrated a lack of interest in completing the courses and eventually abandoned the courses altogether.
 {¶ 36} In addition, the juvenile court noted that BCCS had been ordered to conduct home studies as requested by appellant and Robert. However, the agency was unable to complete the home studies, because appellant and Robert failed to take the necessary steps to initiate them. *Page 10 
 {¶ 37} Also, the juvenile court correctly found that a PPLA is not a viable alternative to granting permanent custody of the children to BCCS, as the agency did not request such a disposition.
 {¶ 38} Further, the juvenile court found that pursuant to R.C. 2151.414(E)(1), appellant failed continuously and repeatedly to remedy the problems that caused the child to be placed outside the home. The juvenile court again detailed the findings as discussed above, and found that appellant failed to complete case plan services.
 {¶ 39} Contrary to appellant's argument, there is nothing in the record to indicate that appellant's disability prevented her from completing the case plan or that BCCS discriminated against appellant in any way. Rather, the record indicates that in each aspect of the case plan, the providers of case plan services considered appellant's disability in attempting to facilitate reunification. There is also nothing in the record to indicate that appellant requested any special accommodations, and in fact, the record reveals that appellant refused to take advantage of the accommodations and services available to her.
 {¶ 40} Next, the juvenile court considered R.C. 2151.414(E)(2), and found that appellant's disease prevents her from providing an adequate permanent home for the children at the present time or within one year following the permanent custody trial.
 {¶ 41} The court also considered R.C. 2151.414(E)(4) in finding that appellant missed approximately half of the scheduled visitations with the children and that she has failed to take all necessary steps to insure that the children would have a stable, structured environment upon reunification.
 {¶ 42} Finally, the court noted that pursuant to R.C. 2151.414(E)(16), appellant has acknowledged that she would be unable to care for the children if custody had been returned to her. *Page 11 {¶ 43} In finding that granting permanent custody of the children to BCCS is in the children's best interest, the juvenile court thoroughly analyzed the evidence and testimony from the permanent custody hearing, and its findings are supported by sufficient clear and convincing evidence. We remind appellant that as an appellate court reviewing a decision granting permanent custody, we neither weigh the evidence nor assess the credibility of the witnesses, but instead determine whether there is sufficient clear and convincing evidence to support the juvenile court's decision. See In re Dunn, Tuscarawas App. No. 2008AP030018, 2008-Ohio-3785.
 {¶ 44} Appellant's second and third assignments of error are overruled.
 {¶ 45} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Section 12101 et seq., Title 42, U.S. Code. *Page 1