[Cite as *In re L.M.*, 2018-Ohio-3712.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

IN RE:

    L.M.,

ADJUDGED NEGLECTED CHILD.

[THOMAS E. MORRISON, SR. - APPELLANT]
[LOLA A. STEWART - APPELLANT]

CASE NO. 3-18-08

O P I N I O N

IN RE:

    T.M.,

ADJUDGED NEGLECTED CHILD.

[THOMAS E. MORRISON, SR. - APPELLANT]
[LOLA A. STEWART - APPELLANT]

CASE NO. 3-18-09

O P I N I O N

IN RE:

    L.M.M.,

ADJUDGED NEGLECTED CHILD.

[THOMAS E. MORRISON, SR. - APPELLANT]
[LOLA A. STEWART - APPELLANT]

CASE NO. 3-18-10

O P I N I O N

**Appeals from Crawford County Common Pleas Court
Juvenile Division
Trial Court Nos. C 2175061, C 2175062, F 2175181,
F 2175198 and F 2175199,**

**Judgments Affirmed**

**Date of Decision:    September 17, 2018**

**APPEARANCES:**

*Brian N. Gernert* **for Appellants**

*Michael J. Wiener* **for Appellee**

**PRESTON, J.**

**{¶1}** Appellants, Lola A. Stewart ("Stewart") and Thomas E. Morrison, Sr. ("Morrison"), appeal the April 4, 2018 decisions of the Crawford County Court of Common Pleas, Juvenile Division, granting permanent custody of their minor children, T.M., L.M., and L.M.M., to Crawford County Job and Family Services (the "agency").  For the reasons that follow, we affirm.

**{¶2}** On April 18, 2017, the agency filed a complaint in case numbers 2175061 and 2175062 alleging T.M. and L.M., respectively, to be neglected children under R.C. 2151.03(A)(2).  (Case No. 2175061, Doc. No. 1); (Case No.

2175062, Doc. No. 1).  In its complaint, the agency requested that the trial court grant it permanent custody of T.M. and L.M.  (*Id.*); (*Id.*).

**{¶3}** Stewart and Morrison stipulated at a hearing on May 8, 2017 that T.M. and L.M. are neglected children, and the trial court adjudicated them to be neglected children under R.C. 2151.03(A)(2) on June 8, 2018.  (Case No. 2175061, Doc. No. 10); (Case No. 2175062, Doc. No. 10).  Also at the May 8, 2017 hearing, the trial court granted the agency temporary custody of T.M. and L.M.  (*Id.*); (*Id.*).

**{¶4}** On July 17, 2017, Stewart filed a motion to stay or dismiss the agency's request that the trial court grant it permanent custody of T.M. and L.M.  (Case No. 2175061, Doc. No. 11); (Case No. 2175062, Doc. No. 11).

**{¶5}** After a hearing on July 17, 2017, the trial court ordered on August 14, 2017 that T.M. and L.M. remain in the temporary custody of the agency.  (Case No. 2175061, Doc. No. 16); (Case No. 2175062, Doc. No. 16).

**{¶6}** At a hearing on September 18, 2017, the agency orally moved to withdraw its request that the trial court grant it permanent custody of T.M. and L.M. and orally requested that the trial court grant it temporary custody of T.M. and L.M. (Case No. 2175061, Doc. No. 21); (Case No. 2175062, Doc. No. 21).  As a result of the agency's request, the trial court issued its dispositional entry on October 23, 2017 committing T.M. and L.M. to the temporary custody of the agency under R.C. 2151.353(A)(2)(a).  (*Id.*); (*Id.*).

{¶7} The agency submitted its case plans regarding T.M. and L.M. to the trial court on November 29, 2017. (Case No. 2175061, Doc. No. 23); (Case No. 2175062, Doc. No. 23). The trial court approved the case plans on January 25, 2018 and incorporated those plans into its entries. (Case No. 2175061, Doc. No. 26); (Case No. 2175062, Doc. No. 25).

{¶8} During the pendency of the cases, Stewart gave birth to L.M.M. in October 2017. (*See* Case No. 2175181, Doc. No. 1). On December 4, 2017, the agency filed a complaint in case number 2175181 alleging L.M.M. to be a dependent child under R.C. 2151.04(C). (*Id.*). In its complaint, the agency requested that the trial court grant it permanent custody of L.M.M. (*Id.*). After a shelter-care hearing that same day, the trial court granted the agency temporary custody of L.M.M. (Case No. 2175181, Doc. No. 8).

{¶9} Stewart and Morrison stipulated at a hearing on December 22, 2017 that L.M.M. is a dependent child and the trial court adjudicated on January 25, 2018 that L.M.M. is a dependent child under R.C. 2151.04(C). (Case No. 2175181, Doc. No. 16). The trial court ordered that L.M.M. remain in the temporary custody of the agency, approved the agency's case plan regarding L.M.M., which was submitted to the trial court on December 22, 2017, and incorporated the case plan into its entry of adjudication. (*Id.*).

{¶10} On December 19, 2017, the agency filed motions for permanent custody of T.M. and L.M. (Case No. 2175198, Doc. No. 1); (Case No. 2175199, Doc. No. 1).

{¶11} On May 17, 2017, the trial court appointed T.M. and L.M. a Guardian Ad Litem ("GAL"). (Case No. 2175061, Doc. No. 7); (Case No. 2175062, Doc. Nos. 7, 26). The trial court appointed L.M.M. the same GAL on December 4, 2017. (Case No. 2175181, Doc. No. 4). The GAL filed his reports on September 18, 2017 recommending that the trial court award permanent custody of T.M. and L.M. to the agency. (Case No. 2175061, Doc. No. 20); (Case No. 2175062, Doc. No. 20). The GAL filed reports on February 27, 2018 recommending that the trial court award permanent custody of T.M., L.M., and L.M.M. to the agency. (Case No. 2175198, Doc. No. 7); (Case No. 2175199, Doc. No. 7); (Case No. 2175181, Doc. No. 17).

{¶12} After a hearing on February 27, 2018, the trial court granted permanent custody of T.M. and L.M. to the agency on April 4, 2018 under R.C. 2151.413. (Case No. 2175198, Doc. No. 8); (Case No. 2175199, Doc. No. 8). Also on April 4, 2018, the trial court issued its dispositional entry granting permanent custody of L.M.M. to the agency under R.C. 2151.353(A)(4). (Case No. 2175181, Doc. No. 18).

{¶13} On April 9, 2018, the agency submitted its semi-annual administrative reviews regarding T.M., L.M., and L.M.M., which were accepted by the trial court.

Case Nos. 3-18-08, 3-18-09 and 3-18-10

(Case No. 2175061, Doc. Nos. 34, 38); (Case No. 2175062, Doc. Nos. 31, 35); (Case No. 2175181, Doc. Nos. 19, 23).

{¶14} On May 1, 2018, Stewart and Morrison filed their notices of appeal. They raise one assignment of error for our review.

**Assignment of Error**

**Crawford County Department of Job and Family Services Did Not Act in Good Faith/Make a Good Faith Effort to Reunify Parent and Child/Prevent the Termination of the Parent Child Relationship**

{¶15} In their assignment of error, Stewart and Morrison argue that the trial court erred in granting permanent custody of T.M., L.M., and L.M.M. to the agency because the agency failed to make a "good faith" effort to reunite them with their children. In particular, Stewart and Morrison contend that the agency failed "to make reasonable modifications to rules, policies, or practices" as required by the Americans with Disabilities Act ("ADA"). (Appellants' Brief at 6).

{¶16} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These

-6-

rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶17} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414.[1] *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) the trial court must find that permanent custody is in the best interest of the child. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. *See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994). R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court
> determines at the hearing held pursuant to division (A) of this section,
> by clear and convincing evidence, that it is in the best interest of the
> child to grant permanent custody of the child to the agency that filed
> the motion for permanent custody and that any of the following apply:

---

[1] A trial court's consideration of a motion for permanent custody under R.C. 2151.353(A)(4) or 2151.413 involves considering the requirements of R.C. 2151.414.

> (a)    The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(B)(1)(a). "Specifically concerning R.C. 2151.414(B)(1)(a), '[i]f one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be placed with the parents within a reasonable period of time or should not be placed with the parents.'" *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13, quoting *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 54, citing *In re Goodwin*, 3d Dist. Shelby No. 17-08-12, 2008-Ohio-5399, ¶ 23.

{¶18} R.C. 2151.414(E) provides, in relevant part:

> (E)    In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot

be placed with either parent within a reasonable time or should not be placed with either parent:

(1)   Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.   In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4)   The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

R.C. 2151.414(E)(1), (4).

**{¶19}** "'If the trial court determines that any provision enumerated in R.C. 2151.414(B)(1) applies,' it must proceed to the second prong of the test, which requires the trial court to 'determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest.'" *In re K.M.S.*, 3d Dist. Marion No. 9-15-37, 2017-Ohio-142, ¶ 23, quoting *In re A.F.* at ¶ 55, and citing R.C. 2151.414(B)(1). "The best interest determination is based on an analysis of R.C. 2151.414(D)." *Id.*

**{¶20}** "Under R.C. 2151.414(D)(1), the trial court is required to consider all relevant factors listed in that subdivision, as well as any other relevant factors." *Id.* at ¶ 24, citing *In re H.M.*, 3d Dist. Logan Nos. 8-13-11, 8-13-12, and 8-13-14, 2014-Ohio-755, ¶ 27. The R.C. 2151.414(D)(1) factors include:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1). "Under this test, the trial court considers the totality of the circumstances when making its best interest determination and no single factor is given greater weight than others by the statute." *In re K.M.S.* at ¶ 24, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56 and *In re Z.Y.*, 8th Dist. Cuyahoga No. 86293, 2006-Ohio-300, ¶ 13.

**{¶21}** If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at

¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶22}** Stewart and Morrison do not challenge any of the trial court's findings under R.C. 2151.414. Rather, Stewart and Morrison contend that the trial court erred by granting permanent custody of T.M., L.M., and L.M.M. to the agency after erroneously concluding that the agency made "good faith efforts" toward reunification. (Appellants' Brief at 14). As an initial matter, because the statute "does not require a children services agency to make a 'good faith' effort to reunify children with their parents," we are assuming that Stewart and Morrison are arguing that the trial court erroneously concluded that the agency made "reasonable efforts" toward reunification. *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 21. *See also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28 ("When the state intervenes to protect a child's health or safety, '[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called "reasonable efforts.""'"), quoting Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation*, 12 B.U.Pub.Int.L.J. 259, 260 (2003).

**{¶23}** No one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed

> to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.* at ¶ 29. In particular, under R.C. 2151.419, when a trial court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). The Supreme Court of Ohio "determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing." (Emphasis sic.) *In re N.R.S.* at ¶ 25, citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such

motions under R.C. 2151.414). "According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at 'adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state.'" *In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.* at ¶ 41.

{¶24} In this case, after the agency withdrew its motions for permanent custody regarding T.M. and L.M., the trial court issued dispositional entries committing T.M. and L.M. to the temporary custody of the agency under R.C. 2151.353(A)(2). At that dispositional hearing, the agency submitted its case plans to the trial court for approval. *See In re C.F.* at ¶ 29 (noting that R.C. 2151.412 "requires the agency to prepare and maintain a case plan for children in temporary custody with the goal '[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home'"), quoting R.C. 2151.412. In its dispositional entries, the trial court approved the agency's case plans after concluding, in part, that the agency's case plans "reasonably address correcting the presenting problems." (Case No. 2175061, Doc. No. 26); (Case No. 2175062, Doc. No. 25). The trial court also incorporated the agency's case plans into its dispositional entries. As such, we conclude that the trial court made the appropriate

reasonable-efforts finding prior to its hearing on the agency's motion for permanent custody of T.M. and L.M. Thus, the trial court was not required to determine whether the agency used reasonable efforts to reunify T.M. and L.M. with their parents at the permanent-custody hearing. *Compare In re N.R.S.* at ¶ 26 (concluding that the trial court was not required to make a reasonable-efforts finding in its permanent-custody entry because it made the required finding in a prior adjudicatory/depositional entry).

{¶25} Regardless of whether the trial court needed to make the reasonable-efforts finding again, the trial court made the same findings in its entries granting the agency permanent custody of T.M. and L.M. (Case No. 2175198, Doc. No. 8); (Case No. 2175199, Doc. No. 8). *See In re B.S.* at ¶ 38. Indeed, the trial court detailed the efforts that the agency took toward remedying the conditions preventing reunification. In particular, the trial court discussed the "deplorable home conditions" which led to the removal of the children from the home. (Case No. 2175198, Doc. No. 8); (Case No. 2175199, Doc. No. 8). The trial court noted that "[t]he on-going caseworker testified she repeatedly instructed [Stewart and Morrison] on what needed to be done to remedy the problem." (*Id.*); (*Id.*). Further, the trial court discussed the efforts of the agency in consulting with "other social service agencies in the area * * * about the provision of [in-home housekeeping]

services [and a life-skills coach] and that neither of these were available in this area * * *." (*Id.*); (*Id.*).

{¶26} In the case of L.M.M., because the trial court issued its dispositional entry granting permanent custody of L.M.M. to the agency under R.C. 2151.353(A)(4), the trial court made its reasonable-efforts findings in its shelter-care entry, adjudicatory entry, and dispositional entry. The trial court concluded in its shelter-care entry that "due to the exigent nature of the circumstances all reasonable efforts to work with the child in the home and prevent a removal was [sic] not possible of completion and the surrounding situation and conditions existing present a significant danger to the safety and welfare of the child for which a removal is necessary to protect the child until the adjudication." (Case No. 2175181, Doc. No. 8). In addition to the requirement under R.C. 2151.419(A)(1) that the trial court determine whether the agency made reasonable efforts to preserve or reunify the family unit, R.C. 2151.419(A)(1) further provides:

> If the agency removed the child from home during an emergency in
> which the child could not safely remain at home and the agency did
> not have prior contact with the child, the court is not prohibited, solely
> because the agency did not make reasonable efforts during the
> emergency to prevent the removal of the child, from determining that
> the agency made those reasonable efforts. In determining whether

reasonable efforts were made, the child's health and safety shall be paramount.

Moreover, the trial court adopted and incorporated the agency's case plan, which identified reunification as its goal, into its adjudicatory entry. (*See* Case No. 2175181, Doc. No. 16). Finally, as we discussed above, the trial court detailed the efforts that the agency took to reunify the family in its dispositional entries granting permanent custody of the children to the agency. (*See* Case No. 2175181, Doc. No. 18). Accordingly, we conclude that the trial court more than sufficiently made its reasonable-efforts determinations in L.M.M.'s case.

{¶27} The trial court's reasonable-efforts findings are supported by clear and convincing evidence. At the February 27, 2018 permanent-custody hearing, Holly Kaple ("Kaple"), who was the Crawford County Children Services's ("CCCS") intake caseworker assigned to the case involving T.M. and L.M., testified that T.M. and L.M. were removed from the home on April 14, 2017 due to the "deplorable" conditions of the home. (Feb. 27, 2018 Tr. at 10-12). According to Kaple, "[t]he home had a strong odor about it. There was a cockroach infestation in the home. There were animals. There were two dogs in the home, and the floors were covered with feces and cockroaches." (*Id.* at 12). Kaple identified State's Exhibit 6 as the photographs that she took depicting the conditions of the home on April 14, 2017. (*Id.* at 12-13).

{¶28} Next, Brook Rachel ("Rachel"), a caseworker with CCCS, testified that she was assigned to the case involving T.M. and L.M., and L.M.M. after her birth. (*Id.* at 18-19). According to Rachel, she "would make monthly home visits to their home" and "would do notes throughout the home, and then [she] would also take pictures throughout the home" during her visits. (*Id.* at 19-20). Rachel identified State's Exhibits 7, 8, and 9 as photographs that she took depicting conditions of the home in July, August, and September 2017, respectively. (*Id.* at 20-21, 24). Rachel testified that the family moved to a new residence in October 2017. (*Id.* at 27). Rachel identified State's Exhibit 10 as photographs depicting the condition of the new residence in October 2017. (*Id.*). The family again moved in November 2017. (*Id.* at 29). Rachel identified State's Exhibits 11 and 12 as photographs depicting the conditions of that residence in November and December 2017, respectively. (*Id.*).

{¶29} According to Rachel, Stewart and Morrison were informed that the residence to which they moved in November 2017 exhibited structural concerns "that would not qualify" as suitable for T.M. and L.M. to be reunited with them. (*Id.* at 32). Despite that information, Stewart and Morrison "chose to rent this trailer with the structural concerns." (*Id.*). After Rachel provided Stewart and Morrison a list of items to "fix" in the residence, Stewart and Morrison again moved in January 2018. (*Id.* at 36). (*See* State's Ex. 15). (*See also* Feb. 27, 2018 Tr. at 40-41). Rachel

identified State's Exhibits 13 and 14 as photographs depicting the conditions of that residence in January and February 2018, respectively. (Feb. 27, 2018 Tr. at 36-39, 42-44).

{¶30} Rachel testified that she "always told [Stewart and Morrison] to clean the home as if the children were living in the home." (*Id.* at 35). Rachel also testified that she provided instructions on items that Stewart and Morrison needed to repair to permit reunification. (*Id.* at 39). Indeed, Rachel identified State's Exhibit 15 as "a home improvement list that [she] had given to the family" detailing items reflected by State's Exhibits 12 and 13 that needed to be remedied for reunification. (*Id.* at 40). Despite Rachel's instructions, she continued to observe conditions preventing reunification. (*See id.* at 35). (*See also id.* at 44).

{¶31} Rachel testified that the agency investigated alternative placements for T.M. and L.M. throughout the agency's "nine open cases with the family." (*Id.* at 46-47).

{¶32} On cross-examination, Rachel testified that she established the family's case plans, which identified reunification as their goal. (*Id.* at 48). (*See* Case No. 2175061, Doc. No. 26); (Case No. 2175062, Doc. No. 25); (Case No. 2175181, Doc. No. 16) (*See also* Feb. 27, 2018 Tr. at 59-60). As part of the case plans, Stewart and Morrison were to work with the Crawford County Board of Developmental Disabilities ("CCBDD"); however, it was discovered that Stewart

and Morrison were not eligible for services with that agency. (Feb. 27, 2018 Tr. at 48-49). Rachel testified, "We've had cases like [Stewart and Morrison's], or home condition cases, and we have not yet been able to find any remedy or service that somebody comes in and teaches them how to clean or cleans their home for them." (*Id.* at 52). (*See also id.* at 62). Rachel testified that she informed Stewart and Morrison of the availability of monetary assistance to assist them in securing appropriate housing; however, she testified that Stewart and Morrison did not take advantage of that service. (*Id.* at 57-58).

{¶33} On re-direct examination, Rachel testified that of the nine times that T.M. and L.M. were removed from their home, eight were due to "filthy, deplorable home conditions." (*Id.* at 78). Rachel further testified that, of those eight times, Stewart and Morrison remedied the home conditions after the agency provided them with instructions. (*Id.* at 78-79). According to Rachel, Stewart and Morrison "failed to implement" those instructions in this case. (*Id.* at 79). Rachel testified that she explored home-care-services options that were available to assist Stewart and Morrison. (*Id.* at 79-80).

{¶34} The GAL also testified. (*Id.* at 81). He testified that, even if Stewart and Morrison qualified for services with the CCBDD, that agency does not provide home-care services. (*Id.* at 87-88).

**{¶35}** Thus, there is clear and convincing evidence supporting the trial court's conclusion that the agency made reasonable efforts toward reunification. Nonetheless, Stewart and Morrison argue that the agency's efforts were not reasonable because it failed "to utilize reasonable modifications" as required by the ADA. (Appellants' Brief at 14). We reject Stewart and Morrison's argument.

**{¶36}** First, Stewart and Morrison failed to allege any violation of the ADA in the trial court. As such, they waived all but plain error on appeal. *In re J.C.*, 2d Dist. Montgomery No. 25608, 2013-Ohio-3937, ¶ 8; *In re L.B.J.*, 4th Dist. Lawrence Nos. 17CA2 and 17CA3, 2017-Ohio-4416, ¶ 17, citing *Snyder v. Stevens*, 4th Dist. Scioto No. 12CA3465, 2012-Ohio-4120, ¶ 15. *See In re Dailey*, 10th Dist. Franklin No. 04AP-1346, 2005-Ohio-2196, ¶ 23. "'[I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Brandon v. Brandon*, 3d Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 37, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

**{¶37}** Even assuming that Stewart and Morrison properly asserted plain error on appeal, their argument does not amount to plain error because "an alleged violation of the ADA is not a defense to a permanent-custody motion." *In re J.C.*

at ¶ 7. *See In re L.B.J.* at ¶ 18 ("We find no plain error because the failure to comply with the ADA does not serve as a basis for invalidating an award of permanent custody and it cannot be raised as a defense to termination of parental rights."), citing *In re Harmon*, 4th Dist. Scioto No. 00CA2693, 2000 WL 1424822, *8 (Sept. 25, 2000) ("We do not believe that a failure to comply with the ADA serves as a basis for invalidating an award of permanent custody. Rather, the ADA appears to contemplate a separate procedure for its enforcement."), citing *In re Rodriguez*, 9th Dist. Wayne No. 98CA007073, 1999 WL 568115, *7-8 (Aug. 4, 1999), and citing *In re B.A.*, 8th Dist. Cuyahoga No. 104496, 2016-Ohio-7786, ¶ 7, 10 ("Ohio courts of appeals are generally in agreement that an alleged violation of the ADA does not provide a defense in an action brought to terminate parental rights. * * * [B]ased on numerous holdings across the country, this court takes the position that a violation of the ADA is not a valid defense to a permanent custody action."), *In re J.C.* at ¶ 7 ("First and foremost, an alleged violation of the ADA is not a defense to a permanent-custody motion. * * * The procedure for enforcing the ADA begins with the filing of a complaint with a designated agency."), *In re C.W.*, 1st Dist. Hamilton No. C-110342, 2011-Ohio-4756, ¶ 41 ("We are persuaded by the Ninth Appellate District's analysis [in *In re Rodriguez*], as well as that of other Ohio appellate districts that have addressed the issue, in holding that an alleged violation of the ADA by a public children-services agency may not be asserted as a defense in a

permanent-custody action brought by that agency."), and *In re D.J.*, 12th Dist. Butler No. CA2008-06-142, 2008-Ohio-5424, ¶ 11 ("[A]gain we 'decline the invitation to create a new means of enforcement that was not adopted by Congress or included by the attorney general in the regulations adopted to implement the ADA.'"), quoting *In re Moore*, 12th Dist. Butler No. CA99-09-153, 2000 WL 1252028, *8 (Sept. 5, 2000).

**{¶38}** Therefore, we conclude that the trial court did not err by granting permanent custody of T.M., L.M., and L.M.M. to the agency. Stewart and Morrison's assignment of error is overruled.

**{¶39}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**