[Cite as *In re M.B.*, 2017-Ohio-7293.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: M.B. | : | **O P I N I O N** |
| | : | |
| | | **CASE NO. 2017-A-0024** |
| | : | |

Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No. 2013 JC 00075.

Judgment: Affirmed.

*Judith M. Kowalski,* 333 Babbitt Road, #323, Euclid, OH 44123 (For Appellant, Rachel Smithers).

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092; and *Margaret A. Draper,* Assistant Prosecutor, ACCSB, 3914 C Court, Ashtabula, OH 44004 (For Appellee, Ashtabula County Children Services Board).

*Eileen Noon Miller,* Law Offices of Eileen Noon Miller, LLC, P.O. Box 1681, Mentor, OH 44060 (Guardian ad litem).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Rachel Smithers, biological mother of M.B., appeals from the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, granting the Ashtabula County Children Services Board ("ACCSB"), appellee herein, permanent custody of the child. We affirm.

{¶2} M.B. was born on May 3, 2011, to her biological parents, appellant, and Colton Bond, who were unmarried and resided in the Commonwealth of Pennsylvania.

ACCSB became involved with M.B. upon appellant's arrest for child endangering and drug paraphernalia in Ashtabula County, Ohio. On September 15, 2013, an ex parte emergency order was granted placing M.B. in the temporary custody of ACCSB. The following day, ACCSB filed a complaint for temporary custody, alleging that the child was neglected and dependent. An emergency shelter-care hearing was held and the court found probable cause for M.B.'s removal, to wit: "Mom was stopped for speeding and a large amount of morphine was found in the vehicle. At the time, it was unclear if the child had ingested any of the drug and she was taken to the hospital. Mom was clearly under the influence and could not give any information regarding the child or any relatives who may be able to care for the child." [1]

**{¶3}** An adjudicatory hearing was held on October 7, 2013 with respect to appellant; appellant's counsel stipulated she was incarcerated in the Ashtabula City Jail at the time the complaint was filed and subsequently incarcerated in Crawford County, Pennsylvania at the time of the hearing. The record is not entirely clear as to what crime prompted the Pennsylvania incarceration but, given the sequence of events, appellant apparently had charges pending in the Commonwealth prior to her arrest in Ohio. The court accordingly concluded the child was neglected as alleged.

**{¶4}** The matter proceeded to a disposition hearing on December 2, 2013, at which ACCSB presented evidence that it was awaiting a home study of a maternal uncle in Pennsylvania who had visited the child one time; M.B. remained in foster care while appellant remained incarcerated. A case plan was adopted and the child remained in the temporary custody of ACCSB.

---

1. Father was also in the vehicle; he was arrested and also incarcerated. He did not participate in the underlying proceedings and has surrendered his parental rights.

**{¶5}** On March 17, 2014, a semi-annual review hearing was held. The magistrate ultimately found appellant remained incarcerated and that M.B. was doing fine in the foster home. Due to her incarceration, there was no evidence that appellant had complied with the case plan.

**{¶6}** On September 12, 2014, ACCSB filed a motion for review, noting the sunset day for extension of temporary custody had inadvertently passed on August 16, 2014. In its motion for review, ACCSB requested M.B. be placed in its permanent custody. The court held an annual review/disposition review hearing on September 22, 2014. During the hearing, the court found the child had no contact with either parent for a year and that both parents continued to be incarcerated. A permanent custody hearing was ultimately scheduled for April 2, 2015. Appellant later moved the court to continue the hearing date for June 8, 2015. The motion was granted.

**{¶7}** On June 8, 2015, the court held a hearing on ACCSB's "Motion for Review/Permanent Custody." At the hearing, ACCSB indicated an intention to amend its motion; as such, the court reset the matter for a hearing on all motions for August 10, 2015. On June 9, 2015, ACCSB filed a motion requesting modification of temporary custody to permanent custody, alleging M.B. had been in temporary custody of ACCSB for 12 or more months of a consecutive 22-month period; that the child cannot be placed with either parent within a reasonable time or the child should not be placed with either parent; and the child is abandoned.

**{¶8}** The matter came on for hearing on August 10, 2015, but was rescheduled due to appellant's inability to leave the Commonwealth of Pennsylvania. The case was ultimately set for hearing on March 9, 2016. At the hearing, ACCSB caseworker Kathy Kasputis testified appellant has had no contact with M.B. since September 2013, the

3

date ACCSB obtained temporary custody of the child. Ms. Kasputis noted appellant was incarcerated from September 2013 until November 2015. Appellant did initially request visitation. The facility in which she was incarcerated, however, declined any visitation due to a conviction for child endangerment.

{¶9} Ms. Kasputis testified she investigated potential placement options for M.B., including the child's paternal grandmother, who was not in a position to care for the child. Dawn Kinnard, a maternal aunt of the child was willing to assume custody; however, no interstate home study was requested because, according to Ms. Kasputis, Ms. Kinnard did not have the stability to assume custody. Similarly, other relatives were also considered but did not qualify due to their lack of stability. Ms. Kasputis was also in contact with a family friend, Nancy Knowles, who had cared for M.B. in 2013 while appellant was working a third-shift job. Ms. Knowles was not considered for placement because, according to Ms. Kasputis, she failed to file a motion for legal custody after being advised by a caseworker to do so. At the time of the hearing, no relative or third party sought to intervene, requested visitation, or moved for legal custody of M.B.

{¶10} Ms. Kasputis testified appellant's case plan required her to have a drug and alcohol assessment as well as a mental health assessment, which she completed through the facility in which she was incarcerated. Mother was also required to establish housing and the necessary stability for the child. According to Ms. Kasputis, appellant had made significant progress with her life and case plan. Because of the relationship M.B. had developed with her foster family, however, Ms. Kasputis recommended permanent custody be awarded to ACCSB. She opined that M.B.:

{¶11} "is the stablest she's been in this home in her short life, four years. She lived in this home two-and-a-half years. Um, I just think it's in her best interests at this

4

point because she knows the foster parents as Mom and Dad. There's been efforts to show her pictures of her parents and she doesn't know who they were, and that was, like, shortly after she came into care."

{¶12} At the time of the hearing, M.B. had resided with her foster family for two and one-half years. The foster parents have stable employment, stable housing, and intend to adopt.

{¶13} Appellant testified that, during her incarceration, she had completed multiple programs and achieved significant progress through the Pennsylvania correctional system. During her incarceration, appellant completed a Leading in Faith & Education course; received a certificate for completion of a Therapeutic Community program; completed a boot camp program where she received a Certificate of Recognition naming her "Most Inspirational;" she also completed the first phase of drug treatment; and a Trauma, Recovery, and Resilience program. Appellant complied with conditions of her parole and remained on probation at the time of the hearing. She testified she has not used illegal substances since her arrest in September 2013.

{¶14} During her incarceration, appellant requested visitation, but was not granted permission due to her conviction for child endangering. As a resident of a subsequent treatment program, mother testified she again requested visitation with M.B.; her request, however, was denied by ACCSB because the facility in which she was residing was near Harrisburg, Pennsylvania and was therefore too far away. Appellant acknowledged that she could have selected a facility closer to Ohio, but she elected treatment near Harrisburg because she had a network of stable family members near that location. She testified her family and support system helped her remain

5

stable. And if she selected a city closer to Ohio, she feared she might be exposed to conditions that might cause her to relapse.

{¶15} Appellant testified she was not permitted to leave Pennsylvania after her release in November 2015 due to restrictions of parole. These restrictions, however, were lifted in February 2016.

{¶16} Appellant testified she has completed all necessary rehabilitation services and has maintained stability since November 2015. As of the hearing date, in March 2016, she had maintained housing and full-time employment since that date.

{¶17} Hobart Shiflit, the child's guardian ad litem ("GAL") testified appellant had made great strides in her life since her 2013 arrest, both while incarcerated and after her release. He maintained, however, given the stability M.B. has enjoyed in the custody of the foster family, that it was in her best interest for permanent custody to be granted to ACCSB.

{¶18} After the hearing, the magistrate issued her decision. She found M.B. had been in the custody of ACCSB for more than 12 months of a consecutive 22-month period. She further noted that, M.B. could not and should not be placed with appellant within a reasonable time and, further, by appellant's failure to maintain contact for more than 90 days, M.B. was abandoned. The court further determined, after considering all necessary factors, that awarding permanent custody to ACCSB was in the child's best interest. Appellant duly objected to the magistrate's decision. A hearing on the objections was held and, on March 29, 2017, the trial court overruled the objections and adopted the magistrate's decision. This appeal follows.

{¶19} Appellant assigns three errors for our consideration. Her first assignment of error provides:

6

**{¶20}** "The Ashtabula County Children's Services Board failed to meet the requirements of Ohio Revised Code Section 2151.414(B)(1)(d), in that the request for permanent custody was first made in their motion for review, filed in 2014, which was untimely, and the trial court erred to the prejudice of the mother by granting permanent custody, as the statutory time requirements were not met."

**{¶21}** Under this assignment of error, appellant asserts ACCSB filed their first motion for permanent custody via a "motion to review," filed on September 12, 2014. The motion for review indicated ACCSB inadvertently missed the sunset date to extend temporary custody and sought a full evidentiary hearing on M.B.'s best interests as it related to ACCSB's temporary custody. Appellant points out, however, this motion was filed *prior to* the one-year statutory window that enables an agency to file a motion for permanent custody. In this case, it would appear that window would have been October 7, 2014, i.e., one year after the child was adjudicated neglected. *See* R.C. 2151.414(B)(1)(e) ("[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code * * *.") Accordingly, appellant argues, ACCSB prematurely sought to terminate her parental rights and therefore she was denied both the substantive and procedural protections afforded her under the law.

**{¶22}** While appellant is correct that the September 12, 2014 motion for review was premature, to the extent it sought to terminate her parental rights, the error was harmless as a matter of law. The hearing was continued and, on June 9, 2015, ACCSB filed an amended motion seeking permanent custody asserting, inter alia, M.B. had been in the temporary custody for more than 12 months of a consecutive 22-month

7

period. The amended motion, which was filed well beyond the 12-month statutory window, effectively supplanted the premature motion. Thus, because the motion was amended after the statutory time had passed, any error in ACCSB's original filing is harmless.

**{¶23}** Appellant's first assignment of error lacks merit.

**{¶24}** Appellant's second and third assignments of error shall be addressed together; they provide:

**{¶25}** "[2.] The juvenile court erred to the prejudice of mother by finding that the child had been abandoned, as the state did not prove by clear and convincing evidence that the parents had abandoned the child.

**{¶26}** "[3.] The decision to award permanent custody was against the manifest weight of the evidence."

**{¶27}** Under her second assigned error, appellant asserts her incarceration prevented her from contacting M.B. and she was not permitted to leave the Commonwealth of Pennsylvania until February of 2016. Because her inability to contact M.B. was not a product of her personal volition, she maintains it was improper to find she abandoned the child. Under her third assignment of error, she challenges the weight of the evidence supporting the trial court's ultimate conclusion to terminate her parental rights.

**{¶28}** "[P]arents who are suitable persons have a 'paramount' right to the custody of their minor children." (Citations omitted.) *In re Murray,* 52 Ohio St.3d 155, 157 (1990). "The fundamental interest of parents is not absolute, however." *In re D.A.,* 113 Ohio St.3d 88, 2007-Ohio-1105, ¶11. The "extreme disposition" of permanently terminating parental rights "is nevertheless expressly sanctioned * * * when it is

8

necessary for the 'welfare' of the child." *In re Cunningham,* 59 Ohio St.2d 100, 105 (1979). "[T]he *fundamental* or *primary* inquiry at the dispositional phase of these juvenile proceedings is not whether the parents * * * are either fit or unfit," rather, it is "the best interests and welfare of that child [that] are of paramount importance." (Emphasis sic.) *Id.* at 106.

{¶29} The trial court must apply R.C. 2151.414(B) to determine the outcome of a motion for permanent custody. The statute provides, in pertinent part:

{¶30} (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶31} * * *

{¶32} (b) The child is abandoned.

{¶33} "* * *

{¶34} (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

{¶35} Once the juvenile court determines that one of the circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, "then the court proceeds to an analysis of the child's best interest." *In re T.B.,* 11th Dist. Lake No.2008-L-055, 2008-Ohio-4415, ¶34. "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, * * * [t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; * * * [t]he wishes

9

of the child * * *; [t]he custodial history of the child * * *; [t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency"; and whether any relevant factors in (E)(7) to (11) of this section apply. R.C. 2151.414(D)(1)(a)-(e).

**{¶36}** The trial court's determination regarding the best-interest issue must be supported by clear and convincing evidence, which is "more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Krems,* 11th Dist. Geauga No.2003-G-2535, 2004-Ohio-2449, ¶36, citing *In re Holcomb,* 18 Ohio St.3d 361, 368 (1985).

**{¶37}** In cases involving the termination of parental rights, an appellate court applies the civil manifest weight of the evidence standard of review. *In re D.H,* 11th Dist. Geauga No.2007-G-2759, 2007-Ohio-3337, ¶20-21. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279 (1978), syllabus.

**{¶38}** Preliminarily, although the magistrate concluded M.B. was abandoned, this was not the sole factor upon which it relied to meet the preliminary prong of the termination test. To the contrary, it primarily found that M.B. had been in the custody of ACCSB for 12 months of a consecutive 22-month period. This finding was supported by the record because, at the time of the amended motion, i.e., June 9, 2015, the child had been in the temporary custody for well over the 12-month statutory period. Accordingly, the court's finding on "12 of 22" factor was sufficient to trigger the court's

best-interest analysis. In this respect, appellant's argument that she did not abandon M.B. is moot.

{¶39} Even if the argument was not moot, however, the record demonstrates that, despite her incarceration and inability to leave Pennsylvania, appellant had no actual contact with M.B. since her arrest. Even though appellant was not permitted to leave the state after her release in November 2015, the record fails to demonstrate she tried to call or write M.B. or, alternatively, attempted to call or write ACCSB or the GAL to arrange some way of communicating with the child.

{¶40} R.C. 2151.011(C) provides: "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Appellant sought some form of visitation while incarcerated, but was prevented from contact due to her child endangerment conviction. Given her request, it would appear she did not wish to relinquish contact with the child, but was forbidden contact by outside conditions. Still, after her release from incarceration, it would appear she could have made some effort to have contact with M.B., even if that contact was by means of a phone or writing. And, even though Ms. Kasputis testified appellant maintained contact with ACCSB, again demonstrating she did not wish to relinquish contact, Ms. Kasputis did not testify appellant actually sought a means to engage the child. Hence, the finding of abandonment was supported by clear and convincing evidence.

{¶41} Next, appellant maintains the weight of the evidence does not support the magistrate's conclusion granting ACCSB's motion for permanent custody. Appellant underscores she completed her case-plan goals and has been sober for over two years.

11

She maintains her inability to visit and engage with M.B. was not a result of her unwillingness to do so, but, rather, was due to conditions resulting from her incarceration. Appellant observes there was substantial evidence that she is, and has been for some time, stable, employed, and sober. Appellant recognizes that M.B.'s stability and bonds with her foster parents should not be overlooked. She contends, however, ACCSB and its caseworkers failed to reach out to her and afford her the opportunity to have contact and ultimately reunify with the child.

{¶42} We acknowledge, as did Ms. Kasputis and the GAL, Mr. Shiflit, appellant has done well to stabilize herself and change her life for the better. Still, a parent's right to raise his or her child is subordinate to the child's best interest. *Miller v. Miller,* 37 Ohio St.3d 71, 75 (1988). Indeed, "a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child." R.C. 2151.414(C). Even though appellant may be suitable for visitation at this point, this does not change the fact that, under the circumstances of this case, M.B.'s best interests are served by granting ACCSB permanent custody.

{¶43} M.B. has integrated into her foster home where she has developed very close ties with the foster parents as well as the foster siblings. Alternatively, there was no evidence indicating any bond between appellant and M.B.; indeed, the evidence demonstrated that M.B. would not even recognize appellant if she had contact with the child. According to the GAL, M.B. requires a legally secure and permanent placement. Given the circumstances, including, and perhaps most importantly, the duration in which appellant has had no contact with M.B., we hold the magistrate did not err in concluding that placement could not be achieved within a reasonable time without an award of

12

permanent custody. The trial court did not abuse its discretion in adopting the magistrate's recommendation to grant permanent custody to ACCSB.

{¶44} Appellant's second and third assignments of error lack merit.

{¶45} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.

TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶46} I respectfully dissent.

{¶47} The law presumes it is in the best interests of a child to be raised by his or her natural parents. *In re Hughes*, 9th Dist. Wayne No. 1759, 1982 WL 2875, *3 (Jan. 20, 1982) ("there is a strong presumption that it is in the child's best interests to be raised by its natural parents"); *In re Mullens*, 1st Dist. Hamilton No. C-790315, 1980 WL 352882, *2 (April 2, 1980) (there is "a strong tendency in our law to find the child's best interests lies in staying with a natural parent"); *see also In re Marriage of Barber*, 8 Ohio App.3d 372, 375 (8th Dist.1983) ("it is in the best interests of children that they continue to know, love, and respect their natural parents").

{¶48} With respect to the issue of M.B.'s best interest, the caseworker, Ms. Kasputis and the GAL, Mr. Shiflit, each testified that appellant has done well to stabilize herself and change her life for the better. These points were underscored even by the magistrate in her decision. Still the magistrate observed:

13

**{¶49}** "As reflected in the testimony of Caseworker Kasputis and Mother as well as the reports of the Guardian ad litem, Mother had the best intentions and made significant efforts to rehabilitate herself throughout these proceedings. Ms. Smithers, however, was not available to provide care for the child prior to the filing of the Permanent Custody motion and remained unavailable and without contact with the child due to parole conditions that prevented her from leaving the Commonwealth of Pennsylvania through February 2016."

**{¶50}** In *In re C.S.*, 9th Dist. Summit No. 25344, 2010-Ohio-4463, the Ninth Appellate District reversed the trial court's decision granting permanent custody of a child to the Summit County Children Services Board and terminating the mother's parental rights because the decision was against the manifest weight of the evidence. This court reasoned that because the mother was not permitted to visit with her child for nearly 18 months before the permanent custody hearing, evidence of the relationship between the mother and child was distorted and could not be meaningfully measured. *Id.* at ¶44, 55.

**{¶51}** In this case, Ms. Kasputis testified appellant had made progress with or completed her case plan objectives. She further stated that, regarding contact with appellant, that "[appellant] has been good. She sends letters, she calls when she was in the institutions. Or a case manager would call." To be sure, appellant did not have any meaningful contact or visitation with M.B. Nevertheless, Ms. Kasputis' testimony indicates she kept in contact with ACCSB, and vice versa.

**{¶52}** ACCSB highlights appellant's failure to make an effort to keep contact with M.B., especially since February 2016, when she was permitted to leave Pennsylvania. While it is puzzling that appellant did not make a more assertive or obvious attempt to

contact M.B., this omission, particularly before February 2016, was due, in large part, to restrictions on appellant's freedom that were beyond her control. Moreover, at the time of the hearing, in March 2016, she had only been permitted to leave Pennsylvania for approximately one month. In *C.S., supra*, the court aptly observed: "Regardless of the reasons for the lack of visitation, the result is that Mother and C.S. did not have a meaningful process by which the question of permanent custody could be determined." *Id.* at ¶55.

**{¶53}** Similar to the court in *C.S.*, we should carefully review the context of appellant's lack of contact. Appellant had been unable to visit M.B. for almost the entirety of M.B.'s involvement with ACCSB. And even though appellant did not attempt to directly contact M.B., Ms. Kasputis testified appellant maintained contact with ACCSB thereby demonstrating an active interest or hope in reunification. While her inability to visit was a result of her previous poor decision making, all witnesses agreed that she has changed her life's direction in a way that would clearly be appropriate for visitation.

**{¶54}** While there had been no visitation and/or contact between appellant and M.B. since September 2013, this evidence is explainable and cannot be viewed in a vacuum. The mere *fact* that appellant had no contact does not effectively inform the inquiry of her relationship with M.B. In this respect, the evidence of appellant's and M.B.'s lack of relationship, without reference to other factors, distorts the analysis because, in short, appellant's and M.B.'s relationship cannot be meaningfully measured without some interaction.

**{¶55}** ACCSB emphasizes that, in selecting a treatment facility, appellant elected to move farther from M.B., to Harrisburg, rather than closer, near Pittsburgh. ACCSB, however, does not mention that appellant did so because she felt the

Harrisburg area afforded her a greater family-support network for her to continue in her recovery. Appellant testified, had she moved closer to Pittsburgh, she would lack the structure and support that had assisted her in obtaining sobriety and stability. Appellant's reason for not moving closer was, upon closer inspection, laudatory: She did not want regress and relapse into the lifestyle that separated her from M.B. in the first place.

{¶56} This writer recognizes that M.B. has integrated into her foster home where she has developed very close ties with the foster parents as well as the foster siblings. Alternatively, there was no evidence indicating any bond between appellant and M.B.; indeed, the evidence indicated that M.B. would not even recognize appellant if she had contact with the child. Still, this writer notes that we have no evidence of how M.B. would interact with appellant and whether appellant could rebuild a relationship with her daughter. To sever appellant's rights, in light of her diligent compliance with her case plan and its goals, would forsake her "fundamental interest" in the custody of M.B. Additional time should be granted to establish whether, regardless of M.B.'s bond and ties to her foster family, it is in M.B.'s best interest to grant ACCSB's motion to terminate appellant's parental rights.

{¶57} In light of the evidence that appellant has effectively distanced herself from the conditions that caused her separation from M.B., that she has met most or all of her case plan goals, and is now capable of commencing a visitation routine that would allow her to reconnect with M.B., this writer strongly feels that the decision granting ACCSB permanent custody is against the weight of the evidence.

{¶58} I respectfully dissent.