[Cite as *In re B.J.P.*, 2018-Ohio-5221.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

IN RE:

                                               CASE NO. 16-18-04

    B.J.P.

[HEATHER G. - APPELLANT]                 O P I N I O N

Appeal from Wyandot County Common Pleas Court
Trial Court No. C2172018

Judgment Affirmed

Date of Decision:   December 26, 2018

APPEARANCES:

   *Mark M. Noland* for Appellant

   *Eric J. Figlewicz* for Appellee

**ZIMMERMAN, J.**

{¶1} Appellant, Heather G. ("Heather"), appeals the June 19, 2018 decision of the Wyandot County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor child, B.J.P, to Wyandot County Department of Job and Family Services (the "agency"). For the reasons that follow, we affirm.

{¶2} B.J.P., born in November of 2017, is the minor child of Heather and Joseph P. ("Joseph").[1] (Doc. Nos. 31, 33). B.J.P. tested positive for THC at birth and Heather "admitted to using heroin as late as the morning of [B.J.P.'s] birth." (Doc. No. 4). Prior to B.J.P.'s birth, on September 21, 2017, Heather and Joseph were arrested after law enforcement executed a search warrant at their residence. (*See* May 14, 2018 Tr. at 18). Ultimately, on December 4, 2017, while this case was pending, Heather was convicted of one count of possession of drugs, one count of trafficking in drugs, and one count of tampering with evidence and sentenced to an aggregate term of 59 months in prison.[2] (State's Ex. A).

{¶3} On November 17, 2017, the agency filed a complaint alleging B.J.P. to be a neglected, dependent, and abused child under R.C. 2151.03(A)(2); 2151.04(B) and (C); and 2151.031(C) and (D). (Doc. No. 1). That same day, the agency filed

---

[1] After he was determined to be B.J.P.'s father, Joseph appeared in the case on March 6, 2018. (Doc. No. 33).

[2] On December 4, 2017, Joseph was sentenced to an aggregate term of 30 months in prison and remained in prison throughout the case. (May 14, 2018 Tr. at 7); (State's Ex. B).

a motion requesting that the trial court grant it emergency temporary custody of B.J.P., which the trial court granted. (Doc. Nos. 3, 11, 14).

{¶4} After a probable-cause hearing on November 28, 2017, the trial court concluded that probable cause existed to believe that B.J.P. was a neglected, dependent, or abused child, that it was in B.J.P.'s best interest that he remain in the temporary custody of the agency, and that "[r]easonable efforts to prevent removal could not be accomplished by the [agency] based on this being an emergency situation." (Doc. No. 18).

{¶5} At a hearing on December 19, 2017, Heather admitted that B.J.P. is a dependent child under R.C. 2151.04(C) in exchange for the trial court dismissing the other abuse, neglect, and dependency allegations contained in the complaint. (Doc. No. 30). On February 8, 2018, the trial court adjudicated that B.J.P. is a dependent child under R.C. 2151.04(C). (*Id.*). The trial court also ordered that B.J.P. remain in the temporary custody of the agency and "found that the [agency] could not provide reasonable efforts to prevent the removal of the child as this was an emergency." (*Id.*).

{¶6} On March 1, 2018, the agency filed a motion for permanent custody of B.J.P.[3] (Doc. No. 32).

---

[3] Throughout the pendency of the case, the trial court approved the agency's case plans, which were submitted to the trial court on December 19, 2017, May 14, and July 5, 2018, respectively, and incorporated the case plans into its entries. (Doc. Nos. 27, 28, 52, 55, 56, 58, 59, 61).

Case No. 16-18-04

{¶7} The trial court appointed B.J.P. a Guardian Ad Litem ("GAL") on November 17, 2017. (Doc. No. 10). The GAL filed her report on May 7, 2018 recommending that the trial court grant permanent custody of B.J.P. to the agency. (Doc. No. 51).

{¶8} After a permanent-custody hearing on March 1, 2018, the trial court granted permanent custody of B.J.P. to the agency on June 19, 2018.[4] (Doc. No. 57).

{¶9} On July 11, 2018, Heather filed her notice of appeal.[5] (Doc. No. 62). She raises two assignments of error for our review, which we review together.

**Assignment of Error No. I**

**The Trial court erred in determining that Appellant, Heather G[.] had abandoned the minor child under Ohio Revised Code Section 2151.414(B)(1)(b).**

**Assignment of Error No. II**

**The Trial Court erred in allowing Wyandot County Job and Family Services to make no attempt at reunification as is required by Ohio law.**

{¶10} In her assignments of error, Heather argues that the trial court erred in granting permanent custody of B.J.P. to the agency because the trial court erred in

---

[4] Joseph consented to the agency's request that it be granted permanent custody of B.J.P. (Doc. No. 57).
[5] Joseph did not file a notice of appeal.

-4-

determining that she abandoned B.J.P. under R.C. 2151.414(B)(1)(b) and because the agency failed to make reasonable efforts toward reunification.[6]

*Standard of Review*

**{¶11}** The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6.

**{¶12}** When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that

---

[6] In its entry granting permanent custody of B.J.P. to the agency, the trial court stated that it was proceeding under R.C. 2151.353(A)(4). However, because the agency previously adjudicated B.J.P. as a dependent child and awarded temporary custody of him to the agency, the trial court was required to proceed under R.C. 2151.414.

one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. *See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994).

{¶13} "The factors contained within R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and only one must be met in order for the first prong of the permanent custody test to be satisfied." *In re S.G.* at ¶ 11. "Specifically concerning R.C. 2151.414(B)(1)(a), '[i]f one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be placed with the parents within a reasonable period of time or should not be placed with the parents.'" *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13, quoting *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 54, citing *In re Goodwin*, 3d Dist. Shelby No. 17-08-12, 2008-Ohio-5399, ¶ 23.

{¶14} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). "Clear and convincing evidence

is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.* at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶15} While Heather challenges the trial court's abandonment finding, she makes no argument regarding the trial court's alternative finding under the first prong of the permanent-custody test. *Compare In re S.G.* at ¶ 11 ("While Father challenges the abandonment finding, he has made no argument regarding the trial court's alternative finding that the child cannot or should not be placed with a parent within a reasonable time based on the demonstration of a lack of commitment toward the child pursuant to R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E)(4)."). *See In re K.T.*, 9th Dist. Lorain No. 16CA010956, 2016-Ohio-7366, ¶ 9-10; *In re E.M.*, 9th Dist. Wayne No. 15CA0033, 2015-Ohio-5316, ¶ 12. *See also In re M.B.*, 11th Dist. Ashtabula No. 2017-A-0024, 2017-Ohio-7293, ¶ 38 ("Preliminarily, although the magistrate concluded M.B. was abandoned, this was not the sole factor upon which it relied to meet the preliminary prong of the termination test.").

{¶16} In this case, the trial court concluded that B.J.P. has not been in the custody of the agency for 12 months of a consecutive 22-month period and that B.J.P. cannot be placed with Heather within a reasonable time and should not be placed with Heather because R.C. 2151.414(E)(11) and (12) apply. *See* R.C.

2151.414(B)(1)(a). *Compare In re S.G.* at ¶ 11. Therefore, notwithstanding any question regarding the trial court's finding under R.C. 2151.414(B)(1)(b), the first prong of the permanent-custody test is satisfied here by the trial court's alternative finding and left unchallenged by Heather. *See In re S.G.* at ¶ 11; *In re E.M.* at ¶ 12. Moreover, because Heather did not challenge that finding or the trial court's best-interest findings, we need not address them. *Id.*; *Id. See also In re L.L.*, 3d Dist. Logan Nos. 8-14-25, 8-14-26, and 8-14-27, 2015-Ohio-2739, ¶ 15.

{¶17} Turning to Heather's reasonable-efforts argument, we conclude that the trial court made the appropriate reasonable-efforts finding.[7]

> No one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 29. In particular, under R.C. 2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate

---

[7] We note that the reasonable-efforts requirement could have been waived under R.C. 2151.419(A)(2)(e) because Heather's parental rights were involuntarily terminated as to her other three children. However, neither the agency filed a motion requesting that the trial court waive the reasonable-efforts requirement nor did the trial court determine that the agency was not required to make reasonable efforts to prevent the removal, eliminate the continued removal, or return B.J.P. to his home.

the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). The Supreme Court of Ohio

determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis sic.) *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 25, citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

*In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.* at ¶ 41.

**{¶18}** Because the trial court made its reasonable-efforts finding when it granted emergency custody to the agency as well as at the time it adjudicated B.J.P. a dependent child and committed him to the temporary custody of the agency, the trial court was not required to make any further reasonable-efforts findings. (*See*

Doc. Nos. 18, 30); *In re S.D.*, 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016-Ohio-1493, ¶ 25. Stated another way, because the trial court previously made the requisite R.C. 2151.419 "reasonable efforts" findings, it was not required to again make that finding at the hearing on the agency's motion for permanent custody filed under R.C. 2151.413. *See In re C.F.* at ¶ 43.

**{¶19}** Here, the trial court specifically concluded that the agency "could not provide reasonable efforts to prevent the removal of the child as this was an emergency." (Doc. No. 30). *Compare In re L.M.*, 3d Dist. Crawford No. 3-18-08, 2018-Ohio-3712, ¶ 26 (noting that the trial court concluded that reasonable efforts were not possible "due to the exigent nature of the circumstances"). In addition to the requirement under R.C. 2151.419(A)(1) that the trial court determine whether the agency made reasonable efforts to preserve or reunify the family unit, R.C. 2151.419(A)(1) further provides:

> If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

R.C. 2151.419(A)(1).

**{¶20}** The trial court's reasonable-efforts finding is supported by clear and convincing evidence in the record. The record reveals that Heather has worked with

a children's services agency since 2010 regarding her issues in parenting her four children. Amongst the issues identified as preventing Heather to retain her parental rights, the consistent and primary one has been her illicit-substance abuse, which precipitated her continual incarceration, including the 59-month prison sentence underlying this case. *Compare In re A.D.*, 12th Dist. Fayette No. CA2014-06-014, 2014-Ohio-5083, ¶ 20 ("While the current case plan was filed when Mother was incarcerated, the evidence demonstrated that the Agency has been involved with Mother and the children for years and the Agency has made reasonable efforts to reunify the family.").

{¶21} Indeed, B.J.P. is the fourth child of which Heather's parental rights have been terminated. (May 14, 2018 Tr. at 21). Heather's parental rights were terminated as to her first two children after a "five (5) year history of an out-of-home placement for these children and these parent's struggles with completing the things necessary for reunification"—namely, continued illicit-substance abuse—and her parental rights were terminated as to her third child after she was born "heavily addicted to substances." (*Id.* at 26, 39-41); (State's Exs. C, D, E).

{¶22} Likewise, Heather has a "criminal history which include[s] * * * being in prison three previous times * * *." (May 14, 2018 Tr. at 24). (*See also id.* at 68). Prior to her September 2017 arrest, Heather "had been released from prison in January of [20]17." (*Id.* at 24). However, she again began abusing drugs and "was

admitted into Cleveland Hospital in August [when she was pregnant with B.J.P.] but checked herself out [against medical advice]." (*Id.* at 24-25). After her arrest on September 21, 2017, she was convicted of one count of possession of drugs, one count of trafficking in drugs, and one count of tampering with evidence, and sentenced to an aggregate term of 59 months in prison. (*Id.* at 34-35); (State's Ex. A).

{¶23} Prior to B.J.P.'s birth, Heather admitted to selling heroin as well as using heroin intravenously "at least once or twice a day" during her pregnancy. (May 14, 2018 Tr. at 16-17, 25). According to Rodney Traxler ("Traxler"), the agency's social-services supervisor, Heather stated that she was using heroin while pregnant with B.J.P. because "she just couldn't help herself because she was addicted to the drug." (*Id.* at 18). She also admitted to using marijuana while pregnant with B.J.P. (*Id.* at 25). When B.J.P. was born, he tested positive for THC. (*Id.* at 21). According to Traxler, Heather stated that the reason that she did not test positive for opiates when B.J.P. was born was because she was "using Carfentanil," which requires "a separate test" that Marion General Hospital—where B.J.P. was born—does not perform. (*Id.* at 27).

{¶24} For these reasons, we conclude that the trial court's reasonable-efforts finding does not run afoul of the requirements of R.C. 2151.419(A)(1). That is, the trial court correctly identified that B.J.P. was removed from his home during an

emergency in which he could not safely remain in the home. Thus, based on the facts and circumstances of this case, B.J.P.'s health and safety was paramount to any service that Heather argues that the agency could have afforded to her. *See In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38, and 9-15-39, 2017-Ohio-142, ¶ 68 ("'Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case.'"), quoting *In re Leveck*, 2003-Ohio-1269, at ¶ 10.

**{¶25}** Therefore, we conclude that the trial court did not err by granting permanent custody of B.J.P. to the agency. Heather's assignments of error are overruled.

**{¶26}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**