[Cite as *Peck v. Peck*, 2019-Ohio-2669.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**


JASON PECK,                                          :          **O P I N I O N**

          Plaintiff-Appellee,              :

          - vs -                                  :          **CASE NO.  2018-L-122**

JESSICA PECK,                                       :

          Defendant-Appellant.          :


Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 2013 DR 000349.

Judgment: Affirmed.


*Jason Peck*, pro se, 7594 Primrose Drive, Mentor on the Lake, OH 44060 (Plaintiff-Appellee).

*Heidi L. Callender*, HL Callender Law, LLC, 2000 Auburn Drive, One Chagrin Highlands, Suite 200, Beachwood, OH 44122 (For Defendant-Appellant).

*Laurie Koerner*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (Guardian ad Litem).


MATT LYNCH, J.

{¶1}    Defendant-appellant, Jessica Peck nka Dressig, appeals the decision of the Lake County Court of Common Pleas, Domestic Relations Division, denying her motion for change of parental rights and responsibilities and terminating the parties' shared parenting plan and awarding custody of the minor children to plaintiff-appellee, Jason Peck.  For the following reasons, we affirm the decision of the court below.

**{¶2}** On January 15, 2014, the parties were granted a decree of divorce which incorporated their shared parenting plan governing their respective rights and responsibilities for parenting two minor children born as issue of the marriage. Dressig was named residential parent for school purposes.

**{¶3}** On December 11, 2017, at 9:26 a.m., Peck filed an Ex Parte Motion for Change of Custody, seeking sole custody of the minor children, based on Dressig's "numerous criminal activities" and the children's exposure to "dangerous situations."

**{¶4}** On December 11, 2017, at 11:00 a.m., Dressig filed a Motion for Change of Parental Rights and Responsibilities, seeking to suspend Peck's parenting time "pending a full hearing on all issues," based on Peck's failure to return the children to her custody after visitation.

**{¶5}** On December 11, 2017, at 11:12 a.m., Dressig re-filed the Motion for Change of Parental Rights and Responsibilities, with the additional caption Ammended [sic] Emergency ex parte Motion. In all other respects, the amended motion was identical to the prior motion.

**{¶6}** On December 11, 2017, at 2:01 p.m., the domestic relations court ruled that Peck's "*Ex Parte* Motion for a Change of Custody" and Dressig's "Amended Emergency *Ex Parte* motion" shall be set for hearing. The court scheduled a Motion Hearing for December 21, 2017, "**12-11-17 ExParte**."[1] Finally, the court ordered the "current order as to custody and parenting time" to remain in effect and the children returned to Dressig forthwith.

**{¶7}** On December 27, a pretrial was scheduled for February 8, 2018.

---

1. There is nothing in the court's docket to indicate that this hearing occurred.

**{¶8}** On February 7, 2018, Dressig filed a motion to continue the February 8 pretrial, which motion the domestic relations court denied.

**{¶9}** At the February 8 pretrial, the domestic relations court ordered the parties to submit to drug testing.

**{¶10}** On March 19, 2018, Dressig filed an Emergency Ex-parte Motion for Change of Parental Rights and Responsibilities, seeking "emergency custody of the minor children." The domestic relations court scheduled a pretrial for April 2, 2018.

**{¶11}** On March 29, 2018, the domestic relations court determined that Dressig's March 19 Emergency Ex-parte Motion lacked the statutorily required affidavit and granted her until May 15 to file an amended motion which includes the affidavit.

**{¶12}** Also on March 29, Dressig caused a subpoena to issue to Lindsey Walker, a social worker with the Lake County Department of Job and Family Services, ordering her appearance as a witness at the April 2 pretrial and the production of "any and all documentation" related to "the above referenced case."

**{¶13}** On March 30, 2019, the Lake County Department of Job and Family Services moved to quash the subpoena on the grounds that "records kept by a public children services agency regarding investigations of families and children are confidential" pursuant to R.C. 5153.17.[2]

**{¶14}** At the April 2 pretrial, the domestic relations court re-appointed Laurie Koerner, the minor children's former guardian ad litem, as guardian ad litem. The court proceeded to an in camera interview of the children with Koerner present. Following the interview, the court found that "exigent circumstances exist" to suspend the shared

---

2. There is nothing in the court's docket to indicate that this motion was ruled upon.

parenting plan and designated Peck as the sole legal custodian until further order.

**{¶15}** On April 17, 2018, Guardian Koerner filed a motion for an order requiring the parties to submit to hair follicle drug testing.

**{¶16}** On May 10, 2018, the domestic relations court ordered Dressig to have "regular telephone contact with the minor children, no less than three times per week."

**{¶17}** On September 14, 2018, the domestic relations court scheduled a trial for October 16, 2018.

**{¶18}** On October 9, 2018, Guardian Koerner filed the Guardian ad Litem's Report and Recommendations.

**{¶19}** On October 15, 2018, Dressig filed her Witness List.

**{¶20}** On October 16, 2018, Dressig filed a Motion to Object to Guardian ad Litem's Report.

**{¶21}** On the same day, trial was held, according to the domestic relations court, "on Mother's December 11, 2017, motion for modification of parental rights and responsibilities * * * the only motion that's not ex parte." The court dismissed Dressig's December 11 Motion "without prejudice for her intentional failure to proceed." The court's written entry described the proceedings as follows:

> The Defendant filed objections, this day, to the Guardian Ad Litem's report. Said objections are denied in that it is the Defendant's responsibility to make an appointment to read the report. Superintendence Rule 48 does not permit the report to [be] copied or notes taken from it. Lastly, the Guardian directs the investigation, not the parent.
>
> * * *
>
> The Defendant asked a procedural question as to why her Motion is being tried this day. The Court responded that a review of the docket would have shown it is the only pending Motion in the

4

case. The docket is available online.

> The Plaintiff then asked the Court to exclude the Defendant's witnesses since she failed to timely submit a witness list to him in violation of the Local Rules. The Court granted the oral motion and excluded the witnesses, if any, that the Defendant planned to call during trial.
>
> The Defendant then demanded a continuance of the trial. Her demand was overruled. The Court reminded her that this was the day of trial and if she was not prepared to proceed, the Court advised [that] her Motion would be dismissed in accordance with the Local Rules. The Defendant refused to proceed. She responded that she'd just refile and attempted to storm out of the courtroom. The Court ordered her to return to her seat, which she did only after the Court ordered the bailiff to bar the door to prevent her from leaving.
> * * *
>
> The Defendant refused to proceed to trial.

{¶22} On November 7, 2018, Dressig filed a Notice of Appeal from the October 16 Judgment Entry in which her "Motion of December 11, 2017 [was] dismissed without prejudice for her intentional failure to proceed. On appeal, she raises the following assignments of error:

{¶23} "[1.] The trial court acted in a[n] arbitrary manner and committed prejudicial error when it held proceedings and pursued activities on a non-emergency motion that did not exist."

{¶24} "[2.] The trial court committed prejudicial error when it terminated the parties' Shared Parenting Plan and awarded sole custody to Appellee without a substantial amount of competent and credible evidence, without considering the factors in R.C. 3109.04(F)(1), without applying the 3-prong test in R.C. 3109.04(E)(1)(a), and in its failing to provide any parental rights to Appellant as required by R.C. 3109.04(E)(2)(d)."

{¶25} The standard of review in matters involving the custody of children is abuse

5

of discretion. *Masters v. Masters*, 69 Ohio St.3d 83, 85, 630 N.E.2d 665 (1994) ("[i]t has long been a recognized rule of law that for a reviewing court to overturn a trial court's determination of custody, the appellate court must find that the trial court abused its discretion").

**{¶26}** In her first assignment of error, Dressig claims the domestic relations court acted arbitrarily by conducting hearings when there were no properly pending motions before it. "The court erred in holding non-*ex parte* proceedings to afford relief neither party had requested." Appellant's brief at 12. Dressig's argument is as follows:

**{¶27}** On December 11, 2017, both parties filed motions to modify custody. Peck's motion was filed as an ex parte motion. Dressig's initial motion was not filed ex parte, but she subsequently amended the motion to request emergency ex parte relief.

**{¶28}** According to the Lake County Court of Common Pleas, Domestic Relations Division, Local Rules, ex parte motions may be granted without hearing. Local Rule 11.02(A). "The Court may grant *Ex Parte* motions where the court finds there are exigent or urgent circumstances which may result in irreparable harm to the party filing the motion. All *Ex Parte* motions that have been denied are to be set for hearing within 28 days of filing." Local Rule 11.02(D).

**{¶29}** The domestic relations court ruled on both parties' ex parte motions the same day. The court granted Dressig's motion by ordering the return of the children to her custody forthwith and by scheduling a hearing on December 21. In the same Entry, the court denied Peck's motion and, in accordance with the Local Rules, set the matter for hearing on December 21. When it ruled on the parties' ex parte motions, the court did not find that exigent circumstances existed.

**{¶30}** Dressig emphasizes that by amending her initial motion for change of custody by requesting emergency ex parte relief, the initial motion requesting "non-emergency" relief was no longer pending before the domestic relations court. "The emergency 11:12am Amended Motion completely supplanted the 11:00am phantom motion." Appellant's brief at 12, citing *In re M.B.*, 2017-Ohio-7293, 97 N.E.3d 17, ¶ 22 (11th Dist.) ("[t]he amended motion * * * effectively supplanted the premature motion").

**{¶31}** According to Dressig, then, the domestic relations court effectively disposed of all pending motions before it by its December 11 entry granting Dressig's requested relief, denying Peck's requested relief, and setting the matter for hearing on December 21. All subsequent proceedings, beginning with the December 27, 2017 scheduling of a pretrial for February 8, 2018, through the April 2, 2018 hearing at which Peck was awarded sole custody of the minor children and the October 16, 2018 hearing at which the court denied Dressig's "phantom" motion to modify custody, were in error inasmuch as "there were no properly pending motions for disposition." Appellant's brief at 6.

**{¶32}** Dressig's argument is without merit. By raising the issue of custody in the domestic relations court by filing motions to modify custody, regardless of whether those motions are styled ex parte motions or not, the parties sanctioned the court's exercise of its continuing jurisdiction over custody and visitation issues, in particular to terminate the shared parenting plan. R.C. 3109.04(E)(2)(c) ("[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children").

**{¶33}** Several courts, including this one, have held that, when issues relating to

7

the care and custody of minor children are raised before a trial court, the court is required to consider the best interests of the children and may act, sua sponte, to modify custody and/or visitation arrangements in accord with those interests. In *Braden v. Braden*, 11th Dist. Portage No. 2006-P-0028, 2006-Ohio-6878, this court rejected an argument "challeng[ing] the trial court's jurisdiction to restrict [appellant's] companionship rights when there was no formal motion presented to the court requesting the modification of [his] companionship rights." *Id.* at ¶ 13. We held:

> The original adjudicating trial court retains jurisdiction regarding custody, support and related matters. * * * Although no motion was before the trial court requesting a modification of visitation per se, appellant's motion for custody and his motion to show cause provided the means through which the trial court reached the restriction of appellant's visitation rights. Prompted by appellant's motion seeking custody, the trial court was required to act in the best interest of the minor children. * * * Appellant opened the door for the trial court to make a complete custody evaluation by filing his motion for sole custody. * * * As part of the court's custody evaluation, and in order to protect the best interest of the minor children, the trial court issued a custody determination that included a restriction of appellant's visitation rights.

*Id.* at 13-14. *See also N.E. v. J.E.*, 2017-Ohio-6917, 94 N.E.3d 1149, ¶ 29 (6th Dist.) ("upon the filing of such a motion [seeking to modify parental rights and responsibilities], and without regard to which party files it, the trial court is statutorily required to render a decision that is in accord with the best interest of the child, even if that decision results in the granting of relief to the nonmoving party"); *Morrow v. Becker*, 9th Dist. Medina No. 07CA00054-M, 2008-Ohio-155, ¶ 9 ("Ohio courts have held that where an issue related to minor children is before the trial court, even if not in the form of a motion to modify visitation or custody, the trial court is bound by statute to consider the best interests of the children before making any determination").

8

**{¶34}** Moreover, we disagree with Dressig's contention that the domestic relations court had effectively addressed all the issues raised in the ex parte motions by its December 11 entry ordering the children to be returned to Dressig and scheduling a hearing on both motions for December 21, 2017. The court's silence in that entry as to the existence of exigent circumstances necessary to afford Peck ex parte relief is indicative of the court's deferral in ruling on the issue rather than a finding that such circumstances did not exist, as subsequent proceedings demonstrated. Also, Dressig had requested a "full hearing on all issues."

**{¶35}** The domestic relations court did not make an express ruling on the existence of exigent circumstances until April 2, 2018, when it reappointed the children's guardian ad litem and conducted an in camera interview of the children. Dressig raised no objection to the proceedings but appeared before the court and attempted to subpoena a witness to testify on her behalf. Likewise, at the October 16, 2018 trial on her "phantom" motion to modify custody, Dressig raised no objection to the court's exercise of jurisdiction and sought to present witnesses, although she demonstrated some confusion as to "whether [the trial] was on my motion or his motion or what exactly it was on."

**{¶36}** Regardless of whether there was a motion properly pending before the domestic relations court on October 16, 2018[3], the court's exercise of jurisdiction with respect to custody and visitation matters following the filing of motions to change custody on December 11, 2017, was neither arbitrary nor improper. The first assignment of error is without merit.

---

3. Even if no motion was properly pending, any error in proceeding with the trial was harmless inasmuch as the court merely dismissed Dressig's December 11 motion "without prejudice for her intentional failure to proceed." The court's rulings awarding Peck sole custody and restricting Dressig's visitation to telephone visitation remained unaffected by the proceedings on October 16, 2018.

9

{¶37} In the second assignment of error, Dressig raises various arguments as to why the domestic relations court erred when it terminated the shared parenting plan and awarded sole custody of the minor children to Peck. Specifically, Dressig contends that the court did not have an adequate evidentiary record on which to modify custody. According to Dressig, the in camera interview of the minor children on April 2, 2018 did not provide the court with a "substantial amount" of evidence necessary to justify a modification. The court compounded this error by not requiring Lake County Department of Job and Family Services to comply with her subpoena, thereby depriving itself of the "opportunity to gather credible evidence from a recent LCJFS investigation."

{¶38} Dressig further argues that the domestic relations court erred by failing to comply with the requirements of R.C. 3109.04. She notes the court terminated the shared parenting plan without making the required statutory findings regarding a change of circumstances, whether the harm likely to be caused by the change is outweighed by the advantages, and the best interest factors set forth in R.C. 3109.04.

{¶39} Finally, the court failed to grant Dressig meaningful visitation following the award of custody to Peck.

{¶40} The judgments Dressig would have this court review are not properly before us. The notice of appeal filed by Dressig is from the domestic relations court's October 16, 2018 entry which merely dismisses her motion to modify custody. The entry terminating the shared parenting plan and designating Peck sole legal custodian of the minor children is dated April 3, 2018 (the hearing occurred on April 2). The court's visitation order was entered on May 10, 2018. Dressig appears to anticipate this deficiency by the following:

10

On April 2 and 3, 2018, the court erred in terminating the parties' Shared Parenting Plan, alongside a wholesale revocation of Appellant's custodial rights "until further order." T.d. 236. The "further order" of the court on 10/16/18 converted Appellee's temporary sole custody into a permanent revocation of Appellant's parental rights with no allocation of parental rights and responsibilities to Appellant per R.C. 3109.04(E)(2)(d). T.d. 258, 10/16/2018 Journal Entry; T.d. 267, 10/16/2018 Hearing Transcript, T.p. 11, Ln. 1-10.

Appellant's brief at 19.

{¶41} It is evident, however, that the proceedings on October 16, 2018 did not convert the ex parte award of custody to Peck into a permanent reallocation of parental rights and responsibilities. After dismissing Dressig's motion for modification of parental rights and responsibilities at trial, the domestic relations court advised her that "the [custody] order that is in place remains." Nothing in the written entry suggests that the October 16 proceedings had any substantive bearing on the prior custody ruling.

{¶42} Furthermore, the proceedings on October 16 terminated with a dismissal for failure to proceed without prejudice, rather than a ruling on the merits of Dressig's motion. Dressig's assignment of error challenges the weight of the evidence and evidentiary rulings. However, no evidence was put before the court on October 16. With respect to the proceedings on April 2 (which are not before this court), there is no transcript of either the in camera interview of the children or of the pretrial in which Dressig and Peck participated. A guardian ad litem's report has been submitted to the court, but this report has not been relied on for any of the court's substantive rulings. In sum, Dressig is requesting this court to review the court's ruling under R.C. 3109.04 when the court has yet to engage in such analysis.

{¶43} The second assignment of error is without merit.

{¶44} For the foregoing reasons, the judgment of the court below is affirmed. Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.